We have three cases scheduled for argument this morning and one one case on the briefs. We have four cases before us for argument and one on the briefs. So we're going to start with the first case, which is Green Valley Company v. Army. We are asking the court to respectfully reverse the board's decision in summary judgment in this case because the equitable tolling of the statute of limitations is the only just position that this case can come up with. There will be unjust enrichment should the result of the judgment not be reversed. Your Honors, this case is a case of extraordinary facts beyond the control of the appellant and possibly beyond the control of the Army, so in reasonable diligence was exercised in pursuit in the rights of the appellant. To my first point, the board dismissed the case without fact finding, summary judgment, and on page 4, 5, and 9 of the response to appeal, the Army made a material fact, an error, that the BPA, which is the subject of this case, was not Although the government made that error in its brief and then submitted us a letter, that the board did not rely on the absence from the Texas case of these invoices or this contract. Your Honor, I don't think that it's very clear from the record of the board's decision that they did not take into consideration BPA 0063. The Palm Springs v. the Army, which was also a board case with BPA 001, Judge Ting dismissed that case because of the civil action and stayed the proceedings because he said it would be a conflict and parallel discovery for the civil action. So, yeah, when you read it carefully, the board's decision on this case, it's not clear that they didn't take into consideration because they say that it's irrelevant that what I perceived or what the appellant perceived to be a risk for filing during the civil action, which carried very heavy penalty. It was a statute of fraud, False Claim Act, Special Pleas and Fraud Statute, Contract Dispute Act, Fraud Enforcement Recovery Act. I just want to make sure I understand what you're saying is that there was a fear that there would be additional charges or counterclaims, I guess, over and above the claims that were being made in the Texas litigation. Correct. It wasn't just a fear. It was actually a reliance upon the Department of Justice lawyer that said to... Yeah, just to be clear, what record evidence is there of that? The only record evidence is an email after I traveled to D.C. and met with the Department of Justice lawyers and they gave me the warning, do not file during this civil action. We want you to cooperate. Your client must cooperate in this case to clear the situation. Where, what page is that in the appendix? It was an email from John Kohler. Do you have an appendix page? No, I didn't submit it. Okay. Yeah, the assumption is that they would have dismissed the case and then the Department of Justice would have filed additional charges against us for bribery for saying that the contract BPA 0063 would have been tainted by additional bribery by Cochran. And then it would have gone to appeal, possibly to the board, and then the board would have stayed the claim for further proceedings with the civil action, which is what they did with the BPA 001. But the contracting officer could have, and maybe I think I'm understanding you to say, would have in fact ruled on the claim under my hypothetical if received in a certified form in 2010. It's possible or not, because the Department of Justice pretty much put a wall between us and the Department of Defense so that they could adjudicate these case against Cochran and Momon and Saud Al-Tawash, which is the target of the investigation and the target of the civil action. Because Saud Al-Tawash was specifically named by Cochran in his handwritten notes that said, don't cooperate, don't confess, get a lawyer, and we'll do trading later. So the Department of Justice was fearful of allowing me or anybody to go to the Department of Defense and submit a claim that would hinder the investigation and the civil action against Cochran and Momon and Saud Al-Tawash. So I'm not really, it's not 100% sure. I'm not sure, to be honest with you, what the contacting officer would have done or not done. I think that they would have just sent it straight to the Department of Justice and said, she's filed a claim. The problem is we don't know what would have happened. That's correct. That's your problem. That's the problem that you have. But it was a very difficult time. I mean, the diligence that we exercised in correcting the record. The Army was under the impression that Green Valley was owned by Saud Al-Tawash because he had declared that. He took a contract in their name without their knowledge. The first time that we found out BPA 001 was in the name of Green Valley is when Attorney Geraldine Chanel called Green Valley and said, well, there's a claim for this BPA in your name. And they said, we don't know about this BPA. So your arguing for equitable tolling, saying that you have the extraordinary circumstance that stood in your way of going to the contracting officer, was the uncertainty of knowing whether the government would take action against you of some sort or what the contracting officer would do with that claim. Do I understand that correctly? Well, I really believed and the appellant believed at the point of time that the DOJ would have taken severe action against that claim. What is that severe action? In order to garner additional bribery charges and false claims. But you already were facing fraud claims, right? Yeah, but it would have caused more, would have compounded it more. And then we would have been compromising the investigation and the civil action with the parallel discovery for the facts. And we were cooperating with the Department of Justice. Can I interrupt for a minute? I thought that the Texas action already involved the same contracted issue already. So what was the additional complicating factor or discovery that you're talking about? Well, that was what the Department of Justice said, that we would assess more penalties against you should you file during this civil action. So we relied upon, the appellant relied upon the Department of Justice, relied upon the case of Judge Ting's decision in the 001 and made the decision to diligently pursue clearing their name and clearing the BPA-0063 from fraud because it wasn't something that Cochran signed. It was signed by James Beard. And it was put into the civil action in order to coerce the Green Valley to cooperate and to help the Department of Justice clear the record, which they did. They sent them bank statements, they sent them anything that the Department of Justice requested was submitted. And then there was a cooperation where the appellant flew to Dubai and had the cooperation and deposition. What is the basis, the other requirement under equitable tolling is that you diligently pursue your rights? Yeah, diligently pursue, but not maximum feasible diligence. I mean, it was diligently pursuing to clear the misinformation and the false information that the Army, Department of Defense, and the Department of Justice had about this BPA-0063 and Green Valley. So it was reasonable diligence to do what the appellant did in that time, which is to cooperate, to provide information, to write letters, to participate in BPA-001. Oppose that by giving the, before the Green Valley got involved with BPA-001 case, the court was going to award money to a claim that was submitted. And the whole contract, BPA-001, was based upon fraud, a conspiracy between Cochran and Sir Hidalto Wash. The Army debarred Green Valley from contracting in May of 2007, correct? Correct. What does debarment mean? Does that mean you cannot submit any type of communication or have any communication? That's correct. The debarment meant that they could not do any business with the United States, could not do any, and that was what Captain Choi said to them, you have been debarred, we're not going to pay these invoices. There was nine months where the Army held onto these invoices and accepted the DD-250s and did not pay them. And during that nine months, they awarded a modification to BPA, increasing it to $100 million. But yet, right after they did the modification for $100 million, they put them on a debarment. And the debarment was because of the BPA-001. Isn't a debarment prospective, applying from the date of the debarment as opposed to retrospective, accounting for matters that have already taken place? Well, yes, but that's not the advice that was given to Green Valley from Captain Choi. So they relied on them. That's how debarment works, right? Right. But it also stopped the payment of the invoices that were in question. They had to litigate it. But it wasn't BPA-0063 that was the debarment. It was BPA-001, which was the one that was a civil action for Cockraham getting bribes and coercion and conspiracy, I'm sorry, with Sir Delta Wash Palm Springs. Palm Springs took that contract in the name of Green Valley without their knowledge because they did a joint venture agreement. Then they tried to get the payments to be submitted to them. So it was a very tough time, a lot of confusion. Kuwait was a very unstable situation for the contractors. They were afraid. Three of the military committed suicide. It was in the market. Three military officers committed suicide because they were being investigated for fraud. Okay. You're into your rebuttal time. Do you want to save your time? Yeah, I'll save my rebuttal time. Thank you. Counselor Finnan? Yes. May it please the Court, on behalf of the Department of Army, we ask this panel to affirm the Board's decision granting summary judgment in favor of the Army. It's undisputed that the statute of limitations ran from roughly December 2006 through December 2012, and no certified claim was filed in that timeframe. With respect to equitable tolling, we submit that the Board properly determined that there was no genuine issue of material fact with respect to that equitable tolling claim. The government moved for summary judgment. Was the Board aware of what you say in your Rule 28J letter, or did the Board think, based on the records submitted to it, that the Texas litigation really had nothing to do with either this contract or these invoices under this contract? Yes, Your Honor. So in connection with that 28J letter, I did go back and review all of the briefing before the Board to see what representations were or were not made. The only thing that was represented before the Board was the existence of that district court action and Green Valley being named as a defendant in that action. There were no representations from either party either way with respect to whether and to what extent it encompassed the issues in this appeal. The same question I asked earlier, if a certified claim had been filed in 2010, this same certified claim that was ultimately filed in 2017, what could, should the CO have done with that claim while the Texas litigation was pending? On the assumption that sooner or later it would have been revealed that the Texas litigation actually involved some of the same subject matter of the claim. Because the claim wasn't filed in 2010, I can't say for certain. But either statutorily or regulatory. A contracting officer statutorily does not have authority to compromise a claim within which that contracting officer suspects fraud. So to the extent a certified claim was, had been timely submitted in 2010, if we assume that hypothetically. The contracting officer either would have paid it if no fraud was suspected or paid it in part and made a decision in the ordinary course or would have referred it probably for a fraud investigation. But what's critical with respect to this appeal is that that claim would have been timely filed. The government would have been on notice of the claim, could have investigated the claim in that timely fashion and Green Valley would have preserved its rights. Do you think there would have been an impact on the Texas case? I mean, I realize it's hypothetical. Right. But I'm just trying to understand. We've got a situation where one party is saying that they were threatened not to file the claim because it could have an impact on the Texas litigation. So I'm just trying to understand that. So the district court litigation in Texas encompassed, the primary focus of that Texas complaint was another blanket purchase order awarded to Palm Springs, another entity. Right. As your 28-J letter explains, this case was also referenced. Right. And Green Valley was a respondent defendant in that action. Blanket purchase order agreement 63, which is the issue in this appeal, was named in that district court action. And the invoices that issue in this appeal were part of that action. So it was all wrapped up together. But again, there's nothing in law that would have prevented Green Valley from timely submitting a certified claim while that district court action was pending. What about the debarment? The debarment also does not preclude them from filing a certified claim. And we know that based on this record because they are still debarred. I thought the debarment was lifted. The debarment in 2008, so there were two debarments. There's the first debarment that would have expired in an extraordinary course in December 1st, 2009. That debarment was then extended to December 1st, 2019. So they are still debarred and have been debarred for the last 10 years or so. That did not preclude them from filing a certified claim in February 2017. It did not preclude the contracting officer from taking up that certified claim in 2017. Taking it up and saying it's out of time? Well, they looked at it on the merits. I mean, they determined it was untimely. The contracting officer was not precluded from looking at the claim by virtue of the debarment. The debarment, as this panel noted a few minutes ago, is prospective only. It doesn't prohibit an entity from filing a certified claim. I asked you a question earlier. I'm not sure you quite answered it. Sure. So my question was whether the filing of a claim would have had an impact, the filing of the claim to the contracting officer, would have had an impact in the Texas case. And what would that have been if there is one? Right. Hypothetically, the email to which Ms. Sacali references does not threaten the Green Valley with consequences. It does not tell Green Valley not to file. It says if you file a certified claim, we reserve our rights to respond as appropriate, which is the government's right. So, yes, theoretically, some other amendment to the complaint could have been sought in the district court action. But the Supreme Court, Menominee Tribe, has held that fear of consequences or fear of future litigation risk is not sufficient to constitute an extraordinary circumstance for satisfaction of the second element of equitable tolling. So I understand. I mean, are we in the position where if the claim had been filed, say, in 2010, and it came to the CO's attention that the Texas case actually did involve this subject matter, and therefore, by assumption anyway, but maybe even inevitably, the CO had reason to suspect fraud because the United States had pledged it in the Texas case, and therefore could not, while that was going on, pay it. So it would have been futile, pointless, but nevertheless not meet the standard for equitable tolling because nothing prevented the, by assumption, futile act. That is true. Nothing prevented, hypothetically, the futile act. But futility, Menominee Tribe, the Supreme Court Menominee Tribe has also held, is not sufficient to meet the extraordinary circumstances. Perception of futility does not meet that circumstance. But importantly, Your Honor, we have a statute of limitations, and we have criteria for equitable tolling because the government has a right to know what claims it faces, right? Witnesses disappear. Paper disappears. If Green Valley had a valid claim, they had an obligation to submit it in a timely fashion. They were a Kuwaiti government contractor, right? The government had a right to know what claims were pending against it in a timely fashion so that it could have investigated it. So even if it would have been futile in terms of getting payment during the period, it was not purposeless from the public interest point of view. Yes. And by way of comparison, Ms. Sacali mentioned other board actions. Palm Springs and other entities that were included in the district court action had timely filed claims or certified claims for their invoices up to and surrounding the district court action and had appealed the denial of those invoices to the board in other board actions. And once the district court litigation was pending, the government sought to stay the board action pending the adjudication of the district court action. Conceivably, had Green Valley timely filed a certified claim, the contracting officer either would have denied it or not acted on it in a reasonable time such that it would be a deemed denial. Green Valley could have proceeded to the board and either the board would have adjudicated it or the parties or the government might have sought to stay the board action. We don't know. But importantly, Green Valley would have preserved its rights. There is no exception recognized by the Supreme Court or any authority that we're aware of that would have forgiven Green Valley's failure to have timely filed a claim based for the reasons that they've asserted in this proceeding, right? Fear of future legal consequences, Menominee Tribe has found that's not appropriate. Fear of increased costs, not appropriate under Menominee Tribe. Futility, not appropriate under Menominee Tribe. Can I just double check something? The email that was referenced, which I guess we do not have, but that was submitted as part of the summary judgment record to the board or not even there? Yes and no. So the email to which Ms. Sacali refers was not before the board during the summary judgment briefing. It was first mentioned by Ms. Sacali on behalf of Green Valley in her motion for reconsideration of the summary judgment decision. It was not attached or in any way presented as competent evidence. It was excerpted in her brief, in the text narrative of her brief. But importantly, I will represent to this court, it does not tell Green Valley not to file a claim. It does not rise to that level, right? It's the government saying if you file a claim, we reserve our rights to respond. The document as such was never submitted. The document as such was never submitted, no. Okay, any other? No, just in further response to Ms. Sacali, she had represented that while the district court action and the debarment were pending, there was a wall between the contractor and the contracting officer. We would submit that the record does not support that. Thank you. You have a little under three minutes. One of the things that the Army has failed to show that it would be prejudicial to them to hold the statute of limitations and to pay them, and it's not burdensome whatsoever to pay these invoices, and there was a time when Green Valley submitted a claim and it went unanswered in 2007. It went unanswered in any way by the Army. That was the unsigned one? Well, it was there on notice. She claims that they were never on notice and that it's burdensome, but they've never proven that it's burdensome for them to pay these invoices of work that was done, and it was burdensome for the appellant to have to clear their name, go through civil action, and all of the diligence that they've exercised. In addition, cooperating with the Department of Justice to, if you want to say that the precedence is don't cooperate, just file your claim, that's the only way you're going to get money, file the claim? You could do both. You could do both if you didn't have a civil action that carried very severe penalties. Okay. Thank you.